Richard E. Gillespie
KELLER, REYNOLDS, DRAKE,
 JOHNSON & GILLESPIE, P.C.
50 South Last Chance Gulch
P.O. Box 598
Helena, MT  59624-0598
Telephone:  (406) 442-0230
Fax:         (406) 449-2256
E-mail:      regillespie@kellerlawmt.com
Attorneys for
  YELLOWSTONE SURGERY CENTER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA,
BILLINGS DIVISION

| | | |
|---|---|---|
| DENICE FABRIZIUS and WILLIAM FABRIZIUS, | ) ) | Cause No. 08-114-BLG-RFC |
| | ) | Hon. Richard F. Cebull |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | |
| DR. KEITH R. SHULTZ, M.D., YELLOWSTONE SURGERY CENTER, DOES 1 through X, and ROE CORPORATIONS I through X, inclusive, | ) ) ) ) ) | **YSC MOTIONS FOR SUMMARY JUDGMENT re NEGLIGENCE AND CONSORTIUM CLAIMS WITH BRIEF IN SUPPORT** |
| Defendants. | ) | |

* * * * * * *

## YSC MOTIONS re NEGLIGENCE AND CONSORTIUM CLAIMS

COMES NOW the Yellowstone Surgery Center [YSC], pursuant to *F.R.Civ.P. 56*, and moves for summary judgment holding that:

1.     The alleged failure of the YSC "to maintain accurate, timely and complete medical records concerning the medical care provided by Dr. Shultz to Denise" Fabrizius has not "caused and contributed to" the "post-procedure neurological injury, permanent disability and damages" she says she suffered;

2.    The YSC did not cause or contribute to the injuries and damages alleged by breaching a duty to "properly monitor and assure the clinical competence of Dr. Shultz;" and

3.    The YSC is not liable to William Fabrizius for any loss of consortium, society and comfort of his wife, Denise Fabrizius.

The Plaintiffs oppose these motions.

## BRIEF IN SUPPORT

### Applicable Law

This being a *28 U.S.C. §1332(a)(1)* diversity case, state substantive law and federal procedural law apply.  *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Feldman v. Allstate Insurance Company*, 322 F.3d 660, 666 (9th Cir. 2003).

### Medical Records

The alleged failure of the YSC "to maintain accurate, timely and complete medical records concerning the medical care provided by Dr. Shultz to Denise" Fabrizius has supposedly "caused and contributed to" the "post-procedure neurological injury, permanent disability and damages" she says she suffered.  *See* the second cause of action alleged by the Plaintiffs.  This action is a "malpractice claim," *M.C.A. §25-9-411(5)(c)* and *§27-6-103(5)*, and is a negligence action. *Negaard v. Estate of Feda* (1968), 152 Mont. 47, 52, 446 P.2d 436, 439.  Mrs. Fabrizius has the burden of proving (1) the duties, *i.e.*, the standards of care applicable to the care she says should have been provided (2) that the YSC breached in a particular way or ways (3) which proximately caused (4) the injuries and damages claimed.  *M.C.A. §26-1-401*; *Montana Deaconess Hospital v. Gratton* (1976), 169 Mont. 185, 189, 545 P.2d 670, 672; *Negaard*, 152 Mont. at 52, 446 P.2d at 439-40.

November 10, 2004, was the only day Mrs. Fabrizius was at the YSC.[1] With the exception of the unsigned copy of Dr. Shultz's report found in Dr. Copeland's records, the YSC is not aware of any treating healthcare provider who received any of the YSC records regarding Mrs. Fabrizius' visit.  There is no evidence of anyone giving the YSC the names of care providers other than Dr. Copeland and asking that a copy of her records be sent to those providers.  There is no evidence of any treating physician asking for the records directly.

Dr. Copeland denies reading reports like Dr. Shultz's in very close detail because the information is usually not very pertinent and in all likelihood he already has the information.  *Copeland*,[2] 72:5-73:3, 77:24-78:2.  It does not appear Dr. Copeland relied upon Dr. Shultz's unsigned report in trying to help Mrs. Fabrizius with her complaint after the epidural steroid injection [ESI].  *Id.*, 30:18-43:6, 49:1-56:1.  There is no evidence of Dr. Copeland or his office receiving a copy of the signed report that disturbs the Plaintiffs so much.  There is no evidence of any treating healthcare provider relying on any of the YSC records in the course of caring for Mrs. Fabrizius.

If Mrs. Fabrizius does not have proof of one of the elements relevant to an act or omission alleged to be negligent, that action fails and summary judgment in favor of the YSC is proper.  *Maffei v. Northern Insurance Company of New York*, 12 F.3d 892, 899 (9th Cir. 1993):

> Rule 56(c) requires entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

---

[1] *YSC Statement of Undisputed Facts* [*YSUF*], Ex. 1: D. Fabrizius redacted medical records.

[2] Dkt. 30, *Plaintiffs' Statement of Undisputed Facts* [*PSUF*], Ex. 2.

bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552 (where nonmoving party would bear burden of proof at trial, moving party may rely on pleadings and allege that the nonmovant failed to establish an element essential to that party's case; nonmoving party must then designate specific facts showing there is a genuine issue for trial). The moving party must show the absence of a genuine issue concerning any material fact, but it need not produce evidence to do so; it may merely point out to the court the absence of evidence. *Id.* at 325, 106 S.Ct. at 2553.

*Abraham v. Nelson*, 2002 MT 94, ¶11, 309 Mont. 366, 369-70, 46 P.3d 628, 631, and *Montana Deaconess Hospital*, 169 Mont. at 190, 545 P.2d at 673 are in accord. The issue of causation is not closed to resolution on a motion for summary judgment. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995); *Krone v. McCann* (1981), 196 Mont. 260, 266, 638 P.2d 397, 400-01 (overruled on other grounds).

Mrs. Fabrizius cannot carry her burden of proof on the causation element. She must present expert testimony favorable to her contentions on the causation element if she is to carry her burden of proof on her records claim. *F.R.Evid. 702*; *Montana Deaconess Hospital*, 169 Mont. at 190, 545 P.2d at 673. She has not. Moreover, factually, the YSC records could not have "caused or contributed to" the "post-procedure neurological" injury and damages claimed if subsequent treating physicians did not receive and rely on any of those records to the detriment of Mrs. Fabrizius. There is simply no evidence of the YSC records causing or contributing to the injury or damages she claims. Therefore, granting the YSC motion for summary judgment on the records claim is proper.

## Clinical Competence

In the second cause of action Mrs. Fabrizius claims the YSC "caused and contributed to" the injuries and damages she alleges by breaching a duty "to

properly monitor and assure the clinical competence of Dr. Shultz." Again, Mrs. Fabrizius must present expert testimony favorable to her contentions on the duty, breach and causation elements if she is to carry her burden of proof on this claim of negligence. *F.R.Evid. 702*; *Montana Deaconess Hospital*, 169 Mont. at 190, 545 P.2d at 673.

Dr. Patrick O. Faricy is the only expert Mrs. Fabrizius is relying upon who offers any insight into what she means by "properly monitor and assure the clinical competence of Dr. Shultz."[3] According to his disclosure on this subject, Dr. Faricy ventures that the YSC failed to assign "a properly credentialed and approved physician proctor to oversee, supervise, and validate over time the demonstration of clinical competence by the requesting physician as to new clinical privileges ...."[4] This is the singular fault Dr. Faricy finds with the credentialing of Dr. Shultz for the pain management privileges the YSC extended him on February 10, 2004.[5]

It is an issue of law for the Court to determine what if any duties the YSC owed Mrs. Fabrizius with regard to the clinical competence of Dr. Shultz. *Aasheim v. Humberger* (1985), 215 Mont. 127, 129, 695 P.2d 824, 826.

Dr. Faricy's opinions on the proctoring duty he thinks the YSC had in 2004 do not comply with *F.R.Civ.P. 26(a)(2)(B)(i)* because they do not give his basis and reasons for his opinions. A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002). The Court should disregard the Faricy opinions "V"

---

[3] *YSUF*, Ex. 11: July 27, 2009 report of Dr. Faricy's opinions.

[4] *Id.*, Dr. Faricy's opinions "V" through "AA," quoting from "X."

[5] *YSUF*, Ex. 8, YSC-23 from Dr. Shultz's credentialing file.

through "AA" as being inadmissible for the failure to comply with *F.R.Civ.P. 26(a)(2)(B)(i)*.

In addition, his duty opinion is not consistent with authoritative sources on the issue. For example, although the YSC was not accredited by JCAHO, "The Joint Commission does not specifically require proctoring; nor does it define the process when it occurs in an organization." Joint Commission on Accreditation of Healthcare Organizations, *Assessing Hospital Staff Competence*, Chap. 4, 103 (Joint Commission Resources, Inc. 2002). Dr. Faricy does not cite any source agreeing with his opinion and contradicting the JCAHO position on the subject.

The YSC is licensed by the State of Montana. Medicare and Medicaid patients have come to the YSC for care from their doctors from the outset. Thus, the YSC has been obligated to comply with the requirements of *42 C.F.R. §416.45* concerning the accountability of the medical staff to it. In fulfilling its obligation, the YSC has had a duty through its governing body to limit the medical staff appointments to those physicians who are legally and professionally qualified for the positions to which they are appointed. *42 C.F.R. §416.45(a)* and the interpretive guidelines[6] for *42 C.F.R. §416.45(a)*, page 84. *42 C.F.R. §416.45(a)*, however, did not impose proctoring as a prerequisite duty on the YSC before granting pain management privileges to Dr. Shultz.

Physicians with medical staff privileges must be periodically reappraised. *42 C.F.R. §416.45(b)*. Dr. Shultz's specific case record at the YSC was one criteria for review during his reappraisal. *§416.45(b)* guidelines, 85. Between

---

[6] *YSUF*, Ex. 12: Appendix L: "Interpretive Guidelines for Ambulatory Surgical Centers" to the Department of Health and Human Services (DHHS) Centers for Medicare and Medicaid Services (CMS) Publication 100-07 entitled "State Operations Provider Certification."

March 29 and October 13, 2004, Dr. Shultz had done seventeen cervical ESIs, none of which forecast the complaints alleged in this case. There was no evidence of foreseeability of any culpability Dr. Shultz may have for the allegations in this case except for the risks inherent with the procedure even when performed within the standards of care.[7] Based on the available information, the governing body of the YSC coincidentally extended all of Dr. Shultz's staff privileges the same day as Mrs. Fabrizius' ESI.[8]

If there was an approved method for credentialing and granting staff privileges without proctoring, which there was, the YSC cannot be held liable for selecting and following that method merely because Dr. Faricy thinks it should have followed a proctoring method. *Juedeman v. Montana Deaconess Medical Center* (1986), 223 Mont. 311, 321-22, 726 P.2d 301, 307-08; *Collins v. Itoh* (1972), 160 Mont. 461, 471, 503 P.2d 36, 42.

Furthermore, Dr. Faricy provides no reference to evidence or authority that proctoring was a generally accepted standard of care that was widely used by facilities like the YSC in 2004. Neither has Mrs. Fabrizius. What Dr. Faricy would have done individually if he had been in charge of credentialing Dr. Shultz and granting pain management privileges does not establish the standard of care for the YSC in 2004; nor does it infer the YSC was negligent for not following the proctoring practice he promotes. *Collins*, 160 Mont. at 469 & 471, 503 P.2d 36, 41-42, followed in *Montana Deaconess Hospital*, 169 Mont. at 190, 545 P.2d at 673.

---

[7] *YSUF*, Ex. 9: Reports regarding the cervical ESIs Dr. Shultz did between March 29 through October 13, 2004.

[8] *YSUF*, Ex. 8, YSC-20 from Dr. Shultz's credentialing file.

<u>Strict Liability</u>.  The competence allegations are essentially a strict liability claim invoking the "nondelegable duty" theory for avoiding the general rule on vicarious liability.  Those allegations advance the proposition that the outcome blamed on the way the ESI was done would not have happened if the YSC had done something more or different toward assuring some higher level of competence Dr. Shultz supposedly lacked.  Like the "ratification" argument the Plaintiffs make on the vicarious liability issue, the "clinical competence" argument made through Dr. Faricy is another announcement of a *res ipsa* concept that a facility owner has a nondelegable duty for the well being of a business invitee, and is strictly liable to one who has an unsatisfactory result while there.

The well developed law of Montana provides that the mere fact of injury or the occurrence of an undesired result, standing alone, does not constitute evidence or raise a presumption or inference of negligence.  *Montana Deaconess Hospital*, 169 Mont. at 191, 545 P.2d at 673; *Loudon v. Scott* (1920), 58 Mont. 645, 194 Pac. 488, 491.  The law does not require that for every injury there must be a recovery of damages.  *Negaard*, 152 Mont. at 52, 446 P.2d at 439-40.  Mrs. Fabrizius' evidence does not prove a breach of duty by the YSC.  Nor has she presented evidence making it more likely than not she would have had a different outcome if Dr. Shultz had been proctored during all 18 cervical ESIs he did at the YSC through November 10, 2004.  *Milliron v. Francke* (1990), 243 Mont. 200, 793 P.2d 824, consistent with *Doerr v. Movius* (1970), 154 Mont. 346, 350, 463 P.2d 477, 479, confirms the YSC did not promise or guarantee Mrs. Fabrizius a successful, satisfactory result merely because it let Dr. Shultz use the facility.

Mrs. Fabrizius was referred by her doctor, Dr. Copeland, to Dr. Shultz for the ESI to help make a diagnosis rather than being admitted as an in-patient who subsequently received it at the direction of someone at the YSC.  She knew Dr.

Shultz would be doing the ESI before she left her doctor.  The ESI was not emergency care; nor was it provided at an acute care facility.  Under these circumstances the "clinical competence" theory of a nondelegable duty does not trump the rule that a healthcare facility is not vicariously liable for the negligence of independent contractor physicians.  *Milliron*, 243 Mont. at 204-05, 793 P.2d at 827-28.

Granting the YSC motion for summary judgment on the clinical competence claim is appropriate.

### Consortium Claim

Incorporating the preceding paragraphs of their complaint into the fourth cause of action, the Plaintiffs contend William Fabrizius has suffered a "loss of consortium, society and comfort of Denise" Fabrizius due to the alleged negligence of Dr. Shultz and the YSC.

As to liability, the consortium claim is derivative of the actions pleaded by Mrs. Fabrizius.  *M.C.A. §25-9-411(5)(a)(ii)*; *Mickelson v. Montana Rail Link, Inc.,* 2000 MT 111, ¶119, 299 Mont. 348, 377, 999 P.2d 985, 1003, where the Court held "that while a loss of consortium claim is independent as to damages, it is derivative as to liability."  The Court explained:

> We believe this approach - *i.e.*, that liability for a consortium claim is derivative, whereas the right to damages for loss of consortium, once the claim is established, is independent - is not only compatible with (although a refinement of) our prior jurisprudence, but is, as well, consistent with the plain language of *§27-1-702*, MCA.  Moreover, we conclude that requiring a defendant to pay damages to a consortium claimant where the injured spouse's or child's recovery is barred under our comparative negligence statute, would create an anomaly in the area of tort law and that the legislature could not have intended such a result.

*Mickelson*, ¶121.

The YSC is not vicariously liable to Mrs. Fabrizius.  Nor is the YSC liable to her on any of her actions asserted against it directly.  Applying the *Mickelson* rule here, the YSC cannot be liable to Mr. Fabrizius if it is not liable to his wife on her claims.  Therefore, summary judgment in favor of the YSC on his claim is warranted.

## Conclusion

Summary judgment is appropriate if there is no genuine issue over any material fact and the movant is entitled to a judgment as a matter of law. *Fed.R.Civ.P. 56(c)*.  The Plaintiffs bear the burden of proof on all of the essential elements of their claims.  *Southern California Gas Company v. Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).  If they do not have proof of one of the elements, that action fails and summary judgment in favor of the YSC is proper.  *Maffei*, 12 F.3d at 899; *Montana Deaconess Hospital*, 169 Mont. at 190, 545 P.2d at 673.

Mrs. Fabrizius cannot carry her burden of proof on the causation element of her medical records claim because she has not presented expert testimony favorable to her contentions on that element.  Nor has she offered any evidence that factually demonstrates she suffered injury or damages as a consequence of any alleged shortcomings in her records at the YSC.

She has not established that the YSC had a duty in 2004 to proctor Dr. Shultz before extending staff privileges that allowed him to do cervical ESIs.  Mrs. Fabrizius' evidence does not prove a breach of duty by the YSC.  Nor does it suggest the YSC caused or contributed to any of the injuries or damages claimed. The YSC did not promise or guarantee Mrs. Fabrizius a successful, satisfactory result merely because it let Dr. Shultz use the facility.

The YSC is not liable to Mrs. Fabrizius.  Therefore, the YSC cannot be liable to Mr. Fabrizius on his consortium claim.

Summary judgment in favor of the YSC on all of its motions is warranted and the YSC should be dismissed from this case.

## Certificate of Compliance

Pursuant to *L.R. 7.1(d)(2)* and *10.1(a)*, the undersigned certifies that the foregoing document is 2,905 words in length, excluding the caption and this certificate of compliance; is double spaced except for the quoted material and the footnotes; and is typewritten in 14 point font without erasures or materially defacing interlineations.

DATED, September 18, 2009.

KELLER, REYNOLDS, DRAKE,
 JOHNSON & GILLESPIE, P.C.
 /s/ Richard E. Gillespie__
Richard E. Gillespie
Attorney for Yellowstone Surgery Center