IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA,
BILLINGS DIVISION

| | |
|---|---|
| DENISE FABRIZIUS and WILLIAM FABRIZIUS, <br><br> Plaintiffs, <br><br> v. <br><br><br> KEITH R. SHULTZ, M.D., DOES 1 through X, and Roe Corporations I through X, inclusive, <br><br> Defendants. | Cause No. 08-114-BLG-RFC <br><br><br><br><br> **ORDER** |

Currently pending before the Court is Keith Shultz, M.D.'s Motion for Partial Summary Judgment. This matter is fully briefed and the Court is prepared to rule without oral arguments.

**BACKGROUND**

Plaintiff made an appointment to see Dr. Copeland, a Billings neurosurgeon, on November 10, 2004, for a second opinion regarding pain symptoms. *D. Fabrizius*, 88:19-89:12. When he reviewed the previous MRI studies, Dr.

Copeland saw spondylosis "most prominently at C6-7 but also at C4-5 and C5-6." *Copeland*, 17:14-18:9.  However, Dr. Copeland could not find diagnostic answers for the cause(s) of all her symptoms.  *Id.*, 17:14-19:22, 20:22-21:5.  The confusion between the symptoms she described and his objective finding was why ". . . I sent her for an epidural to see if I could add some clarity."  *Id.*, 87:14-22.  He wanted to see if there was a treatable problem he could help, so a cervical ESI was the next test he wanted done.  *Id.*, 22:21-23:16.

Dr. Copeland recommended Plaintiff see Dr. Shultz for the ESI.  *D. Fabrizius*, 168:4-8.  The way she remembers it, "Dr. Copeland said something to the effect that if he knew somebody that was really good at this or – he made me feel comfortable with the fact that Dr. Shultz would be a good doctor to go to to have this done."  *Id.*, 92:6-10.  Dr. Copeland led Plaintiff "to believe that [Dr. Shultz] was a good doctor and was good at what he does;" and evidently, that he preferred Dr. Shultz do the ESI.  *Id.*, 168:4-12, 169:3-8.  During the consultation Dr. Copeland arranged and scheduled a C6-7 ESI.  *Copeland*, 26:13-27:14; *D. Fabrizius*, 91:12-18.  The purposes were to help him make a diagnosis, *Copeland*, 18:24-19:22, 20:19-21:5, 22:10-23, along with the hope of it being therapeutic for her.  *Copeland*, 22:24-23:13, *D. Fabrizius*, 91:6-9.

Dr. Shultz performed a cervical epidural steroid injection under fluoroscopy on Plaintiff.  Dr. Shultz dictated a note on Plaintiff's procedure on the date of the procedure and his dictation was later transcribed.  *Shultz*, 214: 7-14.  The preliminary typed dictation stated:

> Subsequent to the epidurogram, no evidence of CSF and paresthesia seems to improve after subsequent negative aspiration of 40 mg of Kenalog followed by 0.25% of Marcaine 1 cc was injected without difficulty.

*Shultz*, 220: 9-13.

Upon review of the preliminary document one to two weeks after the procedure note was dictated, Dr. Shultz made changes before he signed it and it became the final medical record of the epidural injection.  *Shultz*, 213: 12-22; 128: 17-22.  Before signing the preliminary report, Dr. Shultz changed a sentence of the unsigned preliminary note to "more accurately reflect then what happened during the procedure."  *Shultz*, 128:23-25.

After Dr. Shultz's review of the preliminary report and finalization of the medical record, the sentence at issue in the final report read as follows:

> Subsequent to the epidurogram, no evidence of CSF, and paresthesia improved.  Subsequent negative aspiration was done and 40 mg of Kenalog followed by 0.25 % of Marcaine 1 cc was injected without difficulty.

*Shultz*, 219: 3-19.

November 10, 2004 was the only day Plaintiff was at the YSC for care. *Doc. 38*, Ex. 1. There is no evidence of anyone giving YSC the names of care providers, other than Dr. Copeland, and asking that a copy of Plaintiff's records be sent to those providers. *Id*. There is no evidence of any treating physician asking for Plaintiff's records directly. *Id*. With the exception of the unsigned copy of Dr. Shultz's report found in Dr. Copeland's records, there is no evidence of any treating healthcare provider being sent any of the YSC records regarding Plaintiff's visit. *Id*.

Dr. Copeland denies reading reports like Dr. Shultz's in very close detail because the information is usually not very pertinent and in all likelihood he already has the information. *Copeland* 72:5-73:3, 77:24-78:2. It does not appear that Dr. Copeland relied upon Dr. Shultz's unsigned report in trying to help Plaintiff with her complaint after the ESI. *Id.*, 30:18-43:6, 49:1-56:1. There is also no evidence of any treating healthcare provider relying on any of the YSC records in the course of caring for Plaintiff.

On November 6, 2007, prior to filing the Complaint and four days before the three-year statute of limitations expired, Plaintiffs filed a Montana Medical Legal Panel (MMLP) claim, as required by Montana law. The MMLP rendered its decision on February 19, 2008.

## ANALYSIS

### I.   Summary Judgment Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence

and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

**A.     Can Plaintiff Make the Threshold Showing that the Alleged Alteration of Medical Records Caused Damages?**

Mont. Code Ann. § 27-1-202 provides for an award of actual damages. Mont. Code Ann. § 27-1-221, provides for exemplary damages where a defendant is guilty of either actual fraud or actual malice. The statute sets forth the requirements for actual fraud and actual malice as follows:

> (2)    A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
> (a)    deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
> (b)    deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.
>
> (3)    A defendant is guilty of actual fraud if the defendant:
> (a)    makes a representation with knowledge of its falsity; or
> (b)    conceals a material fact with the purpose of depriving the plaintiff of property or legal rights or otherwise causing injury.
>
> (4)    Actual fraud exists only when the plaintiff has a right to rely upon the representation of the defendant and suffers injury as a result of that reliance.

Mont. Code Ann. § 27-1-221 (2009).

The Montana Supreme Court recently held that "whether a plaintiff can establish malice which is necessary to justify an award of punitive damages is an intensely fact specific inquiry." *Logerstedt v. Dist. Court of the Fourth Judicial Dist.*, OP 09-0587, Mont. Nov. 2, 2009.  A complete record is undeniably the most desirable way to see if there is sufficient evidence to prove malice.  *Id.*

In this case, in order to avoid summary judgment in favor of Dr. Shultz on the punitive claim based on actual malice, Plaintiff needs to make a threshold showing that Dr. Shultz knew of or intentionally disregarded "facts that create[d] a high probability of injury" to Plaintiff.  Plaintiff must also show that despite this knowledge, Dr. Shultz, "deliberately proceed[ed] to act in conscious or intentional disregard of the high probability of injury to the plaintiff" or "deliberately proceed[ed] to act with indifference to the high probability of injury to the plaintiff."  Mont. Code Ann. § 27-1-221(2).

Likewise, to avoid summary judgment on a claim for punitive damages based on actual fraud, Plaintiffs must make a threshold showing that "[Dr. Shultz] ma[de] a representation with the knowledge of its falsity" that he "conceal[ed] a material fact with the purpose of . . . causing injury" to Plaintiff.  Mont. Code Ann. § 27-1-221(3).  "Actual fraud exists only when the plaintiff has a right to rely upon the

-7-

representation of the defendant and suffers injury as a result of that reliance." Mont. Code Ann. § 27-1-221(4).

In this case, it is undisputed that Dr. Shultz made a change to his preliminary report regarding his treatment of Plaintiff. Those changes were made by Dr. Shultz before he signed the record and it became an official medical record of the November 10, 2004 procedure.

Additionally, it is also undisputed that with the exception of the unsigned copy of Dr. Shultz's report found in Dr. Copeland's records, there is no evidence of any treating healthcare provider being sent any of the YSC records regarding Plaintiff's visit. *Doc. 38*, Ex. 1. Dr. Copeland denies reading reports like Dr. Shultz's in very close detail because the information is usually not very pertinent and in all likelihood he already has the information. *Copeland* 72:5-73:3, 77:24-78:2. Dr. Copeland did not rely upon Dr. Shultz's unsigned report in trying to help Plaintiff with her complaint after the ESI. *Id.*, 30:18-43:6, 49:1-56:1. There is no evidence of any treating healthcare provider relying on any of the YSC records in the course of caring for Plaintiff.

An examination of the signed medical record and the changes made by Dr. Shultz reveal that a healthcare provider can see and read both the typed, unsigned

-8-

preliminary report and the handwritten changes or corrections made by Dr. Shultz before he signed it and it became the final medical record of Plaintiff's procedure.

Plaintiffs have failed to make a threshold showing that the preliminary draft or the final medical record of Plaintiff's procedure caused or contributed to any injury or damages of Plaintiffs.  Therefore, summary judgment on the punitive claims is appropriate.

**B.     Should Plaintiffs' Third Cause of Action Pertaining to the Doctrine of Res Ipsa Loquitur be Dismissed?**

Dr. Shultz relies upon *Rudeck v. Wright*, 218 Mont. 41, 709 P.2d 621 (1985) and argues that the doctrine of res ipsa loquitur only applies in a medical malpractice action when a doctor leaves a foreign body in a patient.  However, the Rudeck Court did not say such circumstances are the only instances in which res ipsa loquitur may apply in a medical setting.

The Montana Supreme Court has long held that before the doctrine of res ipsa loquitur can be applied in medical malpractice cases, a plaintiff must prove that the result complained of rarely occurs and that it is not an inherent risk of the procedure. *Clark v. Norris*, 226 Mont. 43, 49, 734 P.2d 182 (1987).

In this case, the Court does not have a sufficient basis to rule that because there was not a foreign body left in Plaintiff it is not a res ipsa loquitur case.

However, the Court is interested in whether there are disputed issues of material fact as to whether the result complained of rarely occurs and whether it is an inherent risk of the procedure.

## CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that Dr. Shultz's Motion for Partial Summary Judgment [*doc. 58*] is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's Fifth Cause of Action for punitive damages is **DISMISSED**.

DATED this 15th day of January, 2010.

*/s/ Richard F. Cebull*_____
RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE